**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PAMELA TAYLOR, Plaintiff, | ) | |
| v. | ) | Civil Action No. 12-894 (AK) |
| UNITED STATES OF AMERICA, Defendant. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This Federal Tort Claims Act case was assigned to the undersigned for all purposes and trial on January 2, 2014. On September 4, 2014, this court concluded a two-day bench trial. As directed by the court, the parties submitted their proposed Findings of Fact and Conclusions of Law following the trial. *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law [45] ("Pl.'s Findings"); Defendant's Proposed Findings of Fact and Conclusions of Law Pursuant to Rule 52 [43] ("Def.'s Findings"). This court now makes its Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a)(1). Any facts not expressly stated in the below findings are either immaterial or undisputed. For the reasons set forth herein, the court finds that the plaintiff has not met her burden of proof for her claims of intentional infliction of emotional distress ("IIED"), assault, and battery. The court, therefore, enters judgment in favor of the United States.

## I. BACKGROUND

This suit arises from a federal tort claim against the United States of America ("Defendant") for injuries sustained by Ms. Pamela Taylor ("Plaintiff") while in the custody of

the U.S. Marshals Service ("USMS"). (*See* Original Complaint for Damages Under the Federal Tort Claims Act [1] ("Complaint")). Plaintiff alleges that Supervisory Detention Enforcement Officer Eric Clark ("Officer Clark") committed assault and battery against her while she was in the cellblock of the D.C. Superior Court, awaiting transport to the District of Columbia jail ("DC Jail"). (Complaint ¶¶ 12, 21).

The Plaintiff claims that she followed Officer Clark's request to stop talking with a fellow inmate, responding "alright, you got it." (Trial Tr. [36], 35:16-18, 39:3-7). Further, the Plaintiff claims she was in full restraints (both leg and waist restraints) at all times in the cell block. (Trial Tr.[36], 65:24; Trial Tr. [37], 47:2-9). Plaintiff avers that Officer Clark "grabbed her by the back shackles" and slammed her face onto the ground with "a lot of force." (Trial Tr. [36], 35:18-22, 65:21-22). Plaintiff claims she could not break her fall and suffered serious injury. (Trial Tr. [36], 35:22, 39:16-25). Plaintiff further claims that she suffered emotionally and is now "nervous around authority figures." (Trial Tr.[36], 64:21-65:16).

The Government counters that Plaintiff was talking with another inmate and that Officer Clark ordered her to stop. (Answer [7] ¶ 11). The Government states that Plaintiff became belligerent and put her hand in Officer Clark's face. (Trial Tr. [37], 72:8-9). Officer Clark again informed the Plaintiff to be quiet or he would "place her on the ground." (Trial Tr. [37], 72:11-13). Plaintiff allegedly struck at Officer Clark's face for a second time, and Officer Clark testified that he utilized a leg sweep action to regain control of Plaintiff and place her in full restraints, as he testified that Plaintiff only had leg restraints on at the time of the incident. (Trial Tr. [37], 72:8-73:10, 75:5-7). The Plaintiff fell face first and did not break her fall. (Trial Tr. [36], 35:22; Trial Tr. [37], 76:9-14, 78:1-6). After restraining the Plaintiff, Officer Clark noticed blood on her face and called for medical assistance. (*Id.* at 75:5-8).

DC Emergency Medical Services transported Plaintiff to George Washington Hospital where Plaintiff received treatment for her injuries that included a broken nose, two broken teeth, a split lip, and two black eyes. (*See* Complaint ¶ 13; Trial Tr. [36], 38:7-10, 39:21-25). Plaintiff submitted medical bills from George Washington Hospital and Phillips & Green, MD totaling $11,512.22, as well as several thousand dollars of dental bills from The Washington Dental Health Care Center. (Trial J.Ex. 7-9). Plaintiff maintains that Officer Clark's actions were "malicious, willful, and intentional." (Complaint ¶ 16). Plaintiff brings this claim against the Defendant pursuant to the Federal Tort Claims Act ("FTCA") (28 U.S.C. § 2671, *et seq*.) alleging that the actions constitute assault, battery, and IIED and asks for $300,000 in damages. (Complaint ¶ 21; J.Ex. 10). Defendant denies this claim and avers that Officer Clark took necessary action to defend himself and regain control of Plaintiff. (Answer ¶ 16). Further, Defendant claims that Officer Clark's actions were privileged under DC law. *Evans-Reid v. Dist. of Columbia*, 930 A.2d 930, 937 (D.C. 2007).

The undersigned conducted a two-day bench trial on September 3 and September 4, 2014. After considering witness testimony, evidence presented, and the proposed Findings of Fact and Conclusions of Law of the parties, the court finds that Plaintiff did not meet her burden and finds that Defendant is not liable for IIED, assault, and battery.

## II. <u>FINDINGS OF FACT</u>

### A. <u>Detention of Plaintiff and Cell Block Conditions</u>

1. Plaintiff, a District of Columbia citizen, is currently incarcerated in a Texas federal detention facility. (Trial Tr. [36], 16:12-18:13, Sept. 3, 2014 morning session).

2. On March 17, 2010, Plaintiff appeared before a judge in the Superior Court of the District of Columbia for a probation violation. (Trial Tr. [36], 23:23-25).

3. At that time, the court ordered the Plaintiff "stepped back" into custody to await transport to the DC Jail. (Trial Tr. [36], 26:1-5; Trial Tr. [37], 5:1-5, Sept. 3, 2014 afternoon session).

4. "Stepping back" is an action where the court orders a person not previously in custody to be held for a future court appearance. (Trial Tr. [36], 26:1-5).

5. Prisoners awaiting transport are held in the Superior Court cellblock. (Trial Tr. [36], 26:7-23; Trial Tr. [37], 5:4-6).

6. USMS is in charge of the safety and security of the Superior Court cellblock. (Trial Tr. [36], 26:7-21; Trial Tr. [37], 65:7-21).

7. The Superior Court cellblock is a dangerous place where inmates routinely act in a disruptive manner to other inmates and law enforcement – everything from a "small scuffle to an all-out brawl." (Trial Tr. [38], 11:2-6, 41:19-24).

8. Approximately three months prior to the incident involving Plaintiff, a female inmate hid a folding knife in her genital area and stabbed an officer while in the cellblock. (Trial Tr. [38], 41:5-11).

9. Any inmate can be a threat to law enforcement officers on the cellblock. (Trial Tr. [38], 41:12-18).

10. Inmates can punch or kick officers; one USMS deputy testified at trial that a female inmate with hepatitis once bit her. (Trial Tr. [38], 11:5-9).

11. Ten to fifteen officers typically work each day and deal with over 400 inmates. (Trial Tr. [38], 19:8, 27:17-18).

12. After being stepped back, a USMS deputy searched Plaintiff, stripped Plaintiff of her personal items, and placed Plaintiff in a holding cell. (Trial Tr. [36], 26:7-21; Trial Tr. [37], 12:4-6).

13. A USMS deputy placed leg restraints on Plaintiff prior to moving her to the cellblock. (Trial Tr. [37], 12:10-15, 63:8-20, 65:14-15).

14. Subsequently, Plaintiff was taken downstairs to the cellblock and placed in a cell with approximately twelve to fourteen female inmates. (Trial Tr. [36], 26:19-23).

**B. <u>The Strip Search and Plaintiff's Erratic Conduct</u>**

15. Once in the cellblock, other inmates accused Plaintiff of smoking. (Trial Tr. [36], 32:6-7; Trial Tr. [38], 12:3-10, Sept. 4, 2014; J.Ex. 3).

16. Deputies removed Plaintiff to a separate cell and conducted a strip search. No contraband was found. (Trial Tr. [36], 32:8-13; Trial Tr. [38], 12:11-16; J.Ex. 3).

17. After the search, Plaintiff refused to put her clothes back on and danced around the room naked while screaming obscenities at the officers. (Trial Tr. [38], 12:14-20; J.Ex. 3).

18. Deputies left Plaintiff alone in the cell to calm down. After Plaintiff calmed down and put her clothes on, Deputies placed Plaintiff in waist restraints which consist of belly chains and handcuffs. (Trial Tr. [38], 12:21-25; J.Ex. 3).

19. After approximately fifteen minutes, District Security Officer Sarah Walkup returned and removed the waist restraints. (Trial Tr. [38], 14:17-21, 15:9-14; J.Ex. 5).

20. Plaintiff remained in the cell alone until she was ready to be transported to the DC jail. (Trial Tr. [36], 33:9-34:2).

**C. <u>Preparing for Transport to District of Columbia Jail</u>**

21. Later in the afternoon at approximately 4:00 p.m., Officer Clark assembled Plaintiff and three other inmates for preparation for transport to the DC Jail. (Trial Tr. [38], 13:19-25; J.Ex. 2).

22. In addition to leg restraints, it is USMS policy to apply waist restraints to inmates that are to be transported from the cell block. (Trial Tr. [37], 65:14-21).

23. Plaintiff was the last inmate in line to receive waist restraints. (Trial Tr. [37], 71:18-72:2).

24. Officer Clark had no interaction with Plaintiff prior to this point. (Trial Tr. [37], 64:4-9),

25. While the first three inmates were placed in restraints, Plaintiff was talking loudly with a male prisoner approximately eight to ten feet away who was also being readied for transport. (Trial Tr. [37], 71:8-9, 72:4-5; J.Ex. 1; J.Ex. 2).

26. Officer Clark asked Plaintiff to be quiet and informed Plaintiff that she could talk once she was in the van on the way to the DC Jail. (Trial Tr. [37], 72:4-7; J.Ex. 1; J.Ex. 2).

**D. <u>The Leg Sweep Maneuver</u>**

27. Plaintiff responded by raising her left hand to Officer Clark's face. (Trial Tr. [37], 72:8-9; J.Ex. 1; J.Ex. 2).

28. Officer Clark grabbed Plaintiff's hand and moved it down near her waist. He warned her to keep her hand out of his face. Officer Clark informed Plaintiff that if she did not comply he would "place her on the ground." (Trial Tr. [37], 72:8-13; Trial Tr. [38], 14:13-21; J.Ex. 1; J.Ex. 2).

29. Plaintiff again raised her hands towards Officer Clark's face, hit his glasses, and stated "I'm not going to be quiet and you're not going to place me on the ground." (Trial Tr. [37], 72:13-25).

30. Officer Kent, who was also in the cellblock at the lockup desk, approximately six feet from Officer Clark and Plaintiff, stated that Plaintiff was yelling and that Plaintiff's hands were "going everywhere." (Trial Tr. [38], 14:17-19; 15:18-21).

31. Because of Plaintiff's behavior and her refusal to obey his commands, Officer Clark thought Plaintiff wanted to fight, and he felt the need to protect himself. (Trial Tr. [37], 73:1-3, 13-25; J.Ex. 1; J.Ex. 2).

32. Officer Clark then executed a leg sweep maneuver to force Plaintiff to the ground so he could regain control of her hands. (Trial Tr. [37], 74:18-75:2; J.Ex. 1; J.Ex. 2).

33. Officer Clark performed the leg sweep by grabbing Plaintiff's left wrist with his left hand, placing his right hand behind her left elbow, and sweeping his right leg against her left leg, causing Plaintiff to fall forward. Officer Clark had control of Plaintiff's left arm, while her right hand was free. (Trial Tr. [37], 73:4-7).

34. The leg sweep maneuver is taught to USMS law enforcement officers at the Academy as a non-lethal maneuver to gain control of an inmate. (Trial Tr. [38], 16:18-17:9).

35. After Plaintiff fell to the ground, Officer Clark placed the waist restraint on Plaintiff and handcuffed her hands behind her back. (Trial Tr. [37], 75:5-7; Trial Tr. [38], 15:3-4; J.Ex. 1; J.Ex. 2, J.Ex. 4).

36. During the leg sweep maneuver, Plaintiff failed to catch her fall with her free hand. As a result, she sustained injuries to her face, including a broken nose, two broken teeth, a

lacerated lip that was bleeding, and two black eyes. (Trial Tr. [36], 37:15-39:25; Trial Tr. [37] 46:1-7).

37. Officer Clark noticed the injury and told Officer Kent to call for a nurse; the nurse arrived on scene and instructed the officers to call emergency medical personnel. (Trail Tr. [37], 75:10-14; Trial Tr. [38], 15:3-8, J.Ex. 1; J.Ex. 2, J.Ex. 4).

38. Plaintiff received medical attention for her injuries at George Washington Hospital and returned to the DC Jail that same day, March 17, 2010. (Trial Tr. [37], 17:14-19).

## III. <u>STANDARD OF REVIEW</u>

Under FTCA, the United States is liable for "tortious conduct committed by its employees acting within the scope of their employment[.]" *Richards v. United States*, 369 U.S. 1, 2 (1962). The United States is liable for a tort claim "in the same manner and to the same extent as a private individual under like circumstances[.]" *Quile v. Hill-Rom Co.*, No. 3:08-CV-1659-D, 2012 WL 5439904, at *1 (N.D. Tex. Nov. 7, 2012) (citing 28 U.S.C. § 2674)). The FTCA provides a "limited waiver of the United States' sovereign immunity." *Molzof v. United States*, 502 U.S. 301, 305 (1992) (citing *United States v. Orleans*, 425 U.S. 807, 813 (1976)). Under the FTCA, the "extent of the United States' liability . . . is generally determined by reference to state law." *Id.* (string citation omitted).

## IV. <u>CONCLUSIONS OF LAW</u>

### A. <u>Intentional Infliction of Emotional Distress (IIED)</u>

#### 1. <u>Legal Standard</u>

District of Columbia law controls for an intentional infliction of emotional distress (IIED) tort. *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009). In this jurisdiction, the court examines three elements for an IIED claim. The plaintiff must establish that: (1) the defendant engaged in extreme and outrageous conduct; (2) the plaintiff suffered severe emotional distress; and (3) the defendant's conduct intentionally or recklessly caused the plaintiff emotional distress. *Elhusseini v. Compass Grp. USA, Inc.*, 578 F. Supp. 2d 6, 23 (D.D.C. 2008) (citing *Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 139 (D.C.2006)); *Joyner v. Sibley Memorial Hosp.*, 826 A.2d 362, 373 (D.C. 2003). The defendant's conduct must rise to the level that his actions are so extreme and outrageous that it goes "beyond all possible bounds of decency." *Darrow*, LLP, 902 A.2d at 139 (internal quotation marks omitted) (citing *Jackson v. District of Columbia*, 412 A.2d 948, 957 (D.C. 1980)). A plaintiff is not required to prove a physical injury, *Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C. 1984) (citing *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980)), and the court may infer intent based on the outrageousness of the actions. *Id.* (citing *Sere v. Grp. Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982).

**2. Analysis**

Turning to the first prong, the Plaintiff must show that the Defendant engaged in extreme and outrageous conduct. *Elhusseini*, 578 F. Supp. 2d at 23. The Plaintiff testified that Officer Clark told her to be quiet, and she obeyed. (Trial Tr. [36], 35:17-18). She then stated he "slammed [her] down real fast." (*Id.* at 35:21). Officer Clark testified that Plaintiff refused to be quiet, became belligerent, and "put her hand in [his] face." (Trial Tr. [37], 72:8-9). Officer Clark also testified that Plaintiff raised her hands to his face a second time and her fingers touched his

glasses. (*Id.* at 72:13-14). He then testified that he executed a "leg sweep using the minimum amount of force." (*Id.* at 73:6-7). Officer Clark stated he did not have a "TASER or baton" and used this particular non-lethal maneuver to gain control of Plaintiff while keeping himself mobile around the other prisoners. (*Id.* at 74:21-75:2).

Assuming *arguendo* that Plaintiff's version of events is correct, and the court finds that Officer Clark's actions were unreasonable for the given circumstance, there is not sufficient evidence to show the officer's conduct was *extreme and outrageous* because the leg sweep maneuver is a standard non-lethal technique that was appropriate in this situation. (*See* Trial Tr. [38], 16:19-17:9). Additionally, even if the court found the officer's conduct to be extreme and outrageous, the IIED claim still fails because Plaintiff cannot prove the second and third prongs of the test.

The second prong of the analysis requires that the Plaintiff suffered severe emotional distress. *Elhusseini*, 578 F. Supp. 2d at 23. The Plaintiff testified that the incident impacted her emotionally. (Trial Tr. [36], 64:21). She further testified that the experience made her "kind of . . . afraid of . . . authority figures," "changed [her] outlook," and made her "emotionally depressed." (*Id.* at 65:1-6). Plaintiff, however, only produced medical records substantiating the physical injury. Plaintiff did not produce any documentation relating to any psychiatric evaluation or counseling for the alleged emotional distress. (Trial Tr. [37], 28:5-8). Further, Plaintiff's testimony with respect to her alleged emotional distress was not persuasive. (Trial Tr. [36], 64:21-68:3). With the evidence presented, the court is not convinced that Plaintiff suffered severe emotional distress, and, thus, the court finds the second prong of the test is not satisfied.

Finally, the third prong of the analysis requires that the defendant's conduct intentionally or recklessly caused the emotional distress in the Plaintiff. *Elhusseini*, 578 F. Supp. 2d at 23.

Even if Officer Clark used too much force, there is no evidence that he intentionally or recklessly tried to cause emotional harm. Officer Clark stated he felt fear in his surroundings (Trial Tr. [37], 73:13), but it does not follow that he had the intent to cause emotional distress. As there is no evidence that Plaintiff suffered severe emotional distress, it is impossible for Plaintiff to satisfy the third prong. Because of Plaintiff's inability to satisfy all elements of the tort, the court finds that Defendant is not liable for intentional infliction of emotional distress.

**B. Assault and Battery**

**1. Legal Standard**

District of Columbia law controls for both assault and battery. *Hornbeck*, 569 F.3d at 508. An assault is defined as "an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to [a] victim." *Spicer v. Dist. of Columbia*, 916 F. Supp. 2d 1, 4 (D.D.C. 2013) (citing *Etheredge v. Dist. of Columbia*, 635 A.2d 908, 916 (D.C. 1993)). Battery is defined as "an intentional act that causes a harmful or offensive bodily contact." *Id.* Privilege applies when a law enforcement officer uses force that "the officer reasonably believes is necessary," given the surrounding conditions. *Magliore v. Brooks*, 844 F. Supp. 2d 38, 44 (D.D.C. 2012) (citing *Dist. of Columbia v. Chinn*, 839 A.2d 701, 706 (D.C. 2003)). The officer "has no defense to the battery" if the officer uses force beyond that which is reasonably necessary for a given situation. *Id.* The court determines the reasonableness of force by analyzing the event from "the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Wardlaw v. Pickett*, 1 F.3d 1297, 1303 (D.C. 1993) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotes omitted)); *see also Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 913 (D.C. Cir. 2015). "[T]he excessiveness of the force [must]

be so apparent that no reasonable officer could have believed in the lawfulness of his actions." *Scott v. Dist. of Columbia*, 101 F.3d 748, 759 (D.C. Cir. 1996) (citing *Wardlaw*, 1 F.3d at 1303).

**2. <u>Analysis</u>**

Turning to the first issue of assault,[1] the court is hard pressed to find that this is indeed an issue in this case. If Plaintiff's version of events is correct, no assault occurred because Plaintiff claims Officer Clark forced her to the ground without warning; this substantiates a battery claim, but not assault. (Complaint ¶ 12). Thus, there was no threat of physical harm. If Defendant's version of events is correct, then Officer Clark merely informed Plaintiff she would be put on the ground because she was resisting the application of waist restraints; he did not threaten to do her physical harm. (Answer ¶ 12). Neither party addressed the merits of the assault argument in their respective submissions to the court. Therefore, the court finds no evidence that an assault occurred. *See Spicer*, 916 F. Supp. 2d at 4.

Turning to the issue of battery, the "leg sweep" maneuver used by Officer Clark is an intentional act that did result in harmful bodily contact, and thus, meets the legal definition of battery. *Id.* The question before this court, then, is whether or not Officer Clark's actions are privileged. *See Magliore*, 844 F. Supp. 2d at 44.

Officer Clark testified that Plaintiff put her hands in his face, tried to strike his eyes, disobeyed commands to stop talking, and stated "you're not going to place me on the ground." (Trail Tr. [37], 72:8-16). Although Officer Clark testified that Plaintiff touched his glasses, he

[1] The Complaint [1] and the Government's Motion for Partial Summary Judgment [20] both refer to assault and battery claims; in other words, one claim for assault and another for battery. It is clear to the court that the Government conceded that assault and battery were both triable issues. Neither the Plaintiff nor Defendant, however, makes an argument as to the assault charge in their respective proposed Findings of Fact and Conclusions of Law.

made no mention of this in either of his filed reports. (Trial Tr. [37], 89:1-17). The Plaintiff claims that she was unable to raise her hands to Officer Clark's face because her wrists were restricted by the waist restraints. (*See* Trial Tr. [36], 35:23-24). The field report by Officer Walkup states Plaintiff was in full restraints after the earlier strip search, but that the restraints were removed before Plaintiff was moved to the transfer area. (Def.'s Findings, J.Ex. 5). Officer Kent's report makes no mention of removing the waist restraints, but she testified that she witnessed Officer Clark place handcuffs on Plaintiff after Plaintiff was on the ground, indicating that the restraints had previously been removed and needed to be reapplied. (Trail Tr. [38], 26:9-13; J.Ex. 5). Officer Clark's testimony, Officer Kent's testimony, and Officer Walkup's report present convincing evidence that Plaintiff was not in waist restraints at the time Officer Clark performed the leg sweep maneuver. Therefore, the undersigned finds that it was physically possible for Plaintiff to strike at Officer Clark's face and that she could have posed a legitimate threat to Officer Clark's safety, in light of the aforementioned cellblock conditions.

Officer Clark used a standard non-lethal technique that officers are taught at the Academy. (Trial Tr. [37], 89:22-24). He testified that this is one of several non-lethal techniques that can be used. *Id.* The court cannot say it was an unreasonable technique given the surrounding circumstances that include the general danger of the cellblock and frequent attacks on law enforcement officers. While it is possible another officer in the same situation may have chosen a different technique, a reasonable officer *could* have chosen a leg sweep as the appropriate non-lethal maneuver to regain control of the Plaintiff. Although alternate non-lethal maneuvers exist that may have resulted in no injuries to Plaintiff, or even less substantial ones, this court cannot say that Officer Clark's use of the "leg sweep" was unreasonable in the given situation.

The court is sympathetic to Plaintiff and is troubled by the extent of her injuries, which were indeed significant. The undersigned believes that Officer Clark could have used a different, less violent method to gain control of Plaintiff. The legal standard that guides battery in this case, however, specifically disallows the use of hindsight. *Wardlaw*, 1 F.3d at 1303. Officer Clark was required to react to a situation that had the potential to escalate rapidly. In light of the fact that the undersigned cannot say that Officer Clark's use of force was so excessive that "no reasonable officer could have believed in the lawfulness of his actions," Plaintiff has not met her burden in this case. *Scott*, 101 F.3d at 759. The court therefore finds that Officer Clark's actions are protected by the law enforcement privilege and Plaintiff's battery claim fails. *Magliore*, 844 F. Supp. 2d at 44.

## III. CONCLUSION

For the foregoing reasons, the court finds that Defendant is not liable to Plaintiff for the claim of intentional infliction of emotional distress and is not liable to Plaintiff for assault and battery. Final judgment will be entered for Defendant.

Date: May 11, 2015

/s/
ALAN KAY
UNITED STATES MAGISTRATE JUDGE